Good morning, my name is Michael Kniffen with Morrison & Forster, and I represent the appellant in this case, Orrin Carr. I hope to reserve two minutes for rebuttal. This case presents the question of whether Mr. Carr had fair notice that he could be punished for leaving an apology note to a prison staff member. The magistrate judge ruled that Mr. Carr's due process claim failed as a matter of law because CDCR cited Section 3013, which governs unlawful influence. However, as applied to Mr. Carr in the facts of this case, Section 3013 provided no notice that an apology note risked disciplinary action. Section 3013 prohibits inmates from attempting to gain special consideration by bribery, threats, or other unlawful means. The magistrate judge made no findings that the apology note fell under one of those three specific acts. So one of the theories was that the Christmas card was a gift, and giving a gift is made unlawful by 3010, and therefore it was trying to get influence by unlawful means. Could you respond to that? Yes. So CDCR, in the answering brief, cites to the first and second rule violation reports, stating that prison officials made a finding that the card wasn't an unlawful gift. But at ER 53 through 54 and ER 161 through 175, which is the first and second violation reports, there's no finding by either senior hearing officer that the card was a gift. Neither senior hearing officer cites Section 3010. Neither senior hearing officer says that the card was a gift. The reporting employee does not state that the card was a gift. She could have, of course, written him up for a Section 3010 violation would have directly addressed that issue, but she didn't. She only said that the card was inappropriate because it was over-familiar. So there's no evidence that the card was a gift and violated 3010. And we think as a matter of law, that is a very strained argument, because it doing what Mr. Card did in this case would be one way to comply with it, because ordinary reading of a gift, cards, company gifts, sometimes they contain them, money or whatever, but the card itself contains thoughts or expressions of gratitude. And to make that a violation of the Section 3010 just seems unreasonable. Let me ask you one other question. So one of his arguments is that 3013 violates his notice rights because it didn't give him notice that the card. But his second argument, and I think the one he was pursuing pro se, was, well, my rights were violated because I was punished for a violation of an unwritten rule against over-familiarity, which has been imposed numerous times. So that seems a little bit in the way that over-familiarity was being punished, I guess, under guise of 3013. So how does that affect his 3013 argument? We see that question as kind of two sides of the same coin. So he was punished for giving a card under Section 3013. He looked at the specific acts and said, well, I didn't threaten her. I said, sorry. There was no bribe. And I had no notice that was unlawful. So what was going on here? If it doesn't fall under Section 3013, why was I being punished? And then there's the specific act of over-familiarity. And the record, for example, at ER 54, the first senior hearing officer says the act of giving the card in and of itself is an act of over-familiarity. That's how he justified Mr. Carr's punishment. So can the Bureau of Prisons interpret 3013 as including this over-familiarity? Would we defer to that interpretation? If the facts supported, I think the key question is, does what Mr. Carr did fall under Section 3013? Well, the plain language may be, let's say we agree with you that it doesn't under the plain language. But as the Bureau of Prisons interprets it to include any act of over-familiarity apparently, do we defer to that interpretation? No, I don't think that the court can or should defer to that interpretation because there's no notice. I mean, due process requires notice of what conduct is prohibited. And nothing under 3013 tells inmates like Mr. Carr that over-familiarity would be prohibited. And we know that the Bureau of Prisons can regulate this conduct if they choose to. Section 3400, which applies solely to employees, prohibits undue familiarity for employees to engage in undue familiarity with inmates or their families. So the BOP can definitely regulate. If they choose to do so, they just have to give notice to prisoners that this is something that crosses the bounds. And here, because there was no notice, that violates due process. To what extent is it relevant here? The record suggests that Carr may have actually stolen the blanket predating the note, and that when he gave the correctional official a note saying, sorry, that it was in relationship to him taking the blanket and hoping that it wouldn't come back to haunt him. So, I mean, there's a context here. So does that – what does that mean? So there's no evidence in the record that supports that finding. Only the second hearing officer made that allegation that he stole the blanket. But it's undisputed in the record. There's no evidence that would support that finding from the senior hearing officer. So that finding would – is reviewed for some evidence under this Court's standards. Well, what was he allegedly sorry for? For having taken the blanket without first asking permission. So it's undisputed. Some folks might call that stealing. Only if he left the room without first – without having any permission. In other words, the reporting employee specifically states, the record states, that she gave him permission to take the blanket back to his cellmate. Ultimately, yes. But she was also apparently upset because he took it without permission. Sometimes stores call that shoplifting. Even if they stop you before you get out the door, they think it's shoplifting. And some states might be particularly – What – so the other piece to this, then, is that Mr. Carr asked the reporting employee whether the blanket had anything to do with the CDC 115 violation. And she said – this is at the record 172 – that the blanket had nothing to do with her filing the report. Sure. What was he sorry about? He was sorry for – What was he sorry about? Oh, he was sorry for upsetting her. By? By – by taking a blanket for his cellmate without first asking permission. But her write-up was on the card itself, she thought, was problematic. That's right, Your Honor. That's right. So there's no – we think that the blanket deflects the concern for what everybody agreed, including the reporting employee, which was the core issue, which is the card, and whether that violated Section 3013. Did you want to save the rest of your time? I would. Thank you, Your Honor. Okay. We'll hear from the government. Okay. Good morning, Your Honors. May it please the Court, my name is Brian Kahn. I represent the appellees in this matter. This Court should affirm the District Court's decision to grant Mr. Kerr was cited for and disciplined under a violation of Title 15, CCR, Section 3013 of the Unlawful Interest. So my problem with that is that the plain language doesn't seem to cover what he did, which was to leave this card. So how do we get from the plain language, which refers to bribery, threat, or other unlawful means, to what he actually did, which was to leave the Christmas card? Yes, Your Honor. As demonstrated in the senior hearing officer's findings, here, Mr. Kerr was attempting to avoid punishment by giving a gift. Herein, it was a Christmas card that he had left for her with an apology. Are you saying the card is a gift? So is your position is the card is a gift and it's a 3010 violation? Is that your view? It is, Your Honor. Under — Was 3010 cited in any of the documents? The opposing counsel says it wasn't. It is not, Your Honor. Not in the rules violation documents. Okay. So how do we know that it was a gift and that it was unlawful because of a 3010 violation? It's unlawful means because while unlawful means itself is not defined in the regulations, a dictionary meaning you can interpret that as something not lawful and some sort of means to facilitate that. So it was reasonable to suggest that a separate violation of the same regulations here in Section 3010, which states that inmates cannot give unauthorized gifts, could constitute unlawful means and interpret it into the statute of 3013. But nobody made that interpretation. You're making it now. It's not reflected on the record. That is correct, Your Honor. Okay. Thank you. Second. So, I mean, when I look at the hearing, the second hearing, the hearing officer says, well, the review of the photocopies of the postcard with the handwritten word sorry in itself seems to be innocuous. And then he says, but it's over familiarity. He doesn't say anything about it being unlawful means. So his conclusion was it violates the over familiarity requirement, which either is a unwritten rule or somehow we have to interpret that into 3013. I think you also have to address the prison context that the senior hearing officer at the second hearing noted in the findings. And I think the best analogy I can give is in the Castro case that's cited in the briefs. In Castro, the inmate was challenging his gang validation and he challenged it under due process, whether the regulations were vague as to the term gang associate there. There was also a challenge to the some evidence standard, whether that warranted gang validation. There, one of the pieces of evidence used was a birthday card that the inmate, along with other inmates, had sent to another inmate. All of them were validated gang members. So that was evidence of his association with the gang members. I understand that. But how does this card show that it's a bribe, a threat, or unlawful means? I think here you have to look at the comments of the senior hearing officer. He says it was innocuous. But he also suggests that his line of questioning in the statements directed to Ms. Steele, the reporting officer, there was some concern that he was getting very personal with her, and I'm paraphrasing that here, where he asks a lot of personal questions of her, saying, you know I would protect you, and he tries to relate to her on a personal matter. And given his conviction history, I think the senior hearing officer was proper to interpret that as an issue, excuse me, as something of unlawful influence here. Well, she certainly says that he was over-familiar. I mean, that does seem to be the theme through the hearing officer's statement. But the 3013, the text of that says, gain special consideration or favor by the use of bribery, threat, or other unlawful means. I just don't see how that fits the facts here. I think even though there was a discussion about the plaintiff's questioning of her and such, I think you have to look at it. The conduct fits within the plain language. I'll direct the Court's attention to the hearing at the second disciplinary theme. He terms it as a postcard, so it's a reasonable interpretation as the gift.  Photocopies of the postcard with the handwritten word, sorry, in itself seems to be innocuous. And then he says, but, he uses his first name and the first name of the staff, and so that supports the employee's concern with the inappropriate behavior and or an over-familiarity attempt. So that focus continues to be on over-familiarity as being the violation. But I think ultimately the senior hearing officer concluded that the conduct fit within the plain language of the statute. Where is that? I didn't see that. The only reference to that is the last sentence of the findings where you just say ultimately it was determined that it was an attempt to avoid punishment by way of giving what he termed a postcard, but we know it was a Christmas card with the apology note in it. And as a separate point to that as to whether it was a gift, we have to look at it in a way that a Christmas card, counsel suggests that they accompany gifts and such, I would argue that a Christmas card could be a gift in the context of prisons. Inmates don't make a lot of money. Not all of them have jobs. And even those that have jobs, the wage scale I would not say would be comparable to the outside world. But you're not saying the card was bribery or are you saying the card was bribery? The senior hearing officer did not, there were no findings as to whether there was a bribery or a threat. It wasn't a threat, right? So you have to be saying it's unlawful means, meaning a violation of 3010, which wasn't reflected in any of the documents. That's correct, Your Honor. Okay. So that is what we would have to conclude that even though that the prison officials didn't say so, it was a violation. His leaving a card was a gift that violated 3010. While the statute 3010 wasn't specified, the specific factual findings you can conclude that it was determined to be a gift, though. Do you agree that ER 166 reflects as follows, that senior hearing officer R. Ramon Mearns made a finding that car's conduct in giving steel a card in order to avoid discipline for taking an extra blanket would give prison staff a reason to suspect that he was attempting to gain special consideration by unlawful means? Is that a part of your argument or not? It is. And I addressed it in the context that we have to look at it in a separate context, separate from what we have the outside world. Here, he had elicited questions that seemed to suggest that he was attempting to somehow gain some sort of personal connection with her. But it has to be by unlawful means. So we still have to figure out what was unlawful about it. I mean, normal, outside of a prison, of course, leaving somebody a card is not unlawful means. So we have to find out why Mr. Carr was on notice that leaving the card was unlawful means. I understand that the only basis for that is 3010. Isn't that right? Yes, Your Honor. And both of the statutes are in the Title 15 regulations that the Court has. And in the Rules Violation Report documents, the senior hearing officer noted and specified that each time they're amended, they're also given those updates as well. So that demonstrates knowledge as well. But I'd like to also direct the Court's attention to his statements during the disciplinary process. After the first disciplinary hearing, he appealed the decision through CDCR's internal administrative procedures. Specifically, he stated that what he was doing was not trying to bribe, threaten, or somehow try to extract some sort of personal information. He made these same statements again at the second disciplinary hearing process in the form of the questions that he had sent to the reporting employee when he asked her, have I ever attempted to bribe you or threaten you or somehow extract some form of personal information, suggesting that he knows what the regulation means and that if he had attempted to elicit some sort of personal information and somehow tried to use it against her, he understands what the regulation means. And that leads me to my second point. So assuming that the void for vagueness doctrine even applies to Section 3013, for those reasons, Mr. Carr had fair notice of what he was doing would result in discipline. And I see my time is running out, so I'll be brief. It was proper for the District Court to manage discovery in the way it did. And if there are no further questions, I'll submit. Okay. Thank you. The key issue is whether he had noticed that an apology note was unlawful, according to my language of 3013 or 3010. An apology note does not constitute a gift. There were no findings in the record that apology note was a gift. And to address Judge Fernandez's earlier question about why did he give the apology note, he gave it after he already received permission to take the blanket to his cellmate. So we don't think that the record supports finding that he was seeking any lenient treatment or special consideration. So for those reasons, we think that the case should be reversed, unless there are further questions, I'll submit. Thank you. All right. The case of Carr v. Case is submitted, and this hearing is adjourned.
judges: Daniel, Fernandez, Ikuta